DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Huron County Court of Common Pleas, following a trial to the court, which involves a dispute regarding the sale of land and farm buildings. For the reasons stated herein, this court affirms the judgment of the trial court.
 {¶ 2} The following facts are relevant to this appeal. On September 25, 2000, appellees, Donald and Barbara Nofzinger, filed a forcible entry and detainer ("FED")action in Norwalk Municipal Court against appellant, Susan Blood, and Robert Poturica, Jr. ("Poturica") who is not a party to this appeal. Attached to the complaint was a copy of a document entitled "AGREEMENT FOR LAND CONTRACT PURCHASE" entered into by appellees, appellant and Poturica on April 1, 1997. Appellees sought possession of land and farm buildings that were the subject of that agreement as well as damages. Appellees filed an amended complaint on October 4, 2000. On October 16, 2000, appellant and Poturica filed an answer, counterclaim, and a motion to transfer to the Huron County Court of Common Pleas. On October 20, 2000, appellees filed an answer to the counterclaim. On October 27, 2000, a judgment entry was filed in Norwalk Municipal Court, indicating that the parties had agreed to transfer the case to the Huron County Court of Common Pleas.
 {¶ 3} Discovery proceeded, pretrial conferences were held, and a trial date was set. On August 13, 2001, a consent judgment entry was filed which indicated that the parties had agreed to execute and record a proper land installment contract for the subject property and equally divide the costs of a property survey necessary to complete the land installment contract. The parties were unable to execute a proper land installment contract and a trial date was set for February 20, 2002. Following trial, findings of fact, conclusions of law, and a judgment entry was filed on February 27, 2002.
 {¶ 4} The trial court concluded that the land contract purchase agreement and agreement for land contract purchase were not land installment contracts ("the contracts"); that the parties made a mutual mistake of law and fact in believing that they had entered into a land installment contract; that there was no meeting of the minds as to the boundaries of the ten acres; that appellant and Poturica had no right to rely on appellees for legal advice upon which the doctrine of estoppel could be based. The trial court determined that a fair rental for the ten acres and the barn would be $350 per month; that appellees were not entitled to possession under an FED action because they had accepted payments after the notice to vacate had been given; that appellant and Poturica were not in default on their rental payments; and a month to month tenancy remained in effect until such time as either party properly terminated the tenancy.
 {¶ 5} The trial court dismissed the FED action with prejudice; granted judgment against appellees in the amount of $25,623.39, representing an amount paid to appellees in excess of the fair rental value; and declared that the land contract purchase agreement and agreement for land contract purchase were not land installment contracts. Appellant filed a timely notice of appeal.
 {¶ 6} Proceeding pro se[1] in this appeal, appellant sets forth the following eleven assignments of error:
 {¶ 7} "I. The Trial Court abused it's (sic) discretion in finding mutual mistake where the parties are not pari-delicto (sic). (JE 2/20/02: Conclusion of Law #3)
 {¶ 8} "II. The Trial Court made an error in law ruling prior to 2/20/02 trial that the contracts were not valid contracts for the purchase of real property and in limiting testimony which resulted in manifest injustice whereby party at fault benefits. (JE Conclusion of Law #3 and #4, PT(partial transcript) Pg 49-50, 52, 55, 76)
 {¶ 9} "III. The Trial Court made an error in law and equity in not recognizing the validity of substantial part performance and the rights of a vendee in possession. (JE 02/20/02 Finding of Fact #3, Conclusion of Law #5, PT pg 76)
 {¶ 10} "IV. The Trial Court made an error in law that the doctrine of estopple (sic) is not applicable. (JE 2/20/02 Fact #3, Conclusion #5, PT pg 80)
 {¶ 11} "V. The Trial Court erred in failure (sic) to substantially consider the overall contract as integral to all elements of the case (JE 12/21/01, PT pg 48, MTEA (Motion to Enforce Agreement transcript) pg 5-7, 25, 35; JE 2/20/02 Fact #1)
 {¶ 12} "VI. The Trial Court made an error in law and equity where if the sales contract is void remedies should be rescission, out of pocket, benefit of bargain or other appropriate remedy not return of rent overpayment. (JE 2/20/03 Fact #15)
 {¶ 13} "VII. The Trial Court made an error in law resulting from failure to recognize material misrepresentations of fact as fraud and in limiting testimony in support of counterclaim of fraud resulting in a decision whereby plaintiffs may further carry out the fraud (JE 2/20/02 Conclusion #3, PT 52-55, MTEA 22-23)
 {¶ 14} "VIII. The Trial Court made an error in discretion in not recognizing unconscionable position (sic) appellant has been put in and held in due to failure to file contracts, unfounded nature of original suit and subsequent pleadings which constitute legal malice. (R1 Eviction Notice, PT pg 4, 6, Plaintiffs amended complaints)
 {¶ 15} "IX. The Trial Court made an error of fact and law declaring any tenancy in existence against the manifest weight of the evidence and thereby further placing appellant in an unconscionable position (JE 2/20/02 Conclusion #2, and footnote #2)
 {¶ 16} "X. The Trial Court made and (sic) error in discretion not ordering specific performance for whatever portion of the contracts can be salvaged with judicial assistance and monetary relief and damages for the portions removed. (JE)
 {¶ 17} "XI. The Trial Court made and (sic) error in discretion not requiring proof of facts and monetary accounting concerning the roadway project and additional related sales of contracted for property in an effort to resolve issues where numerous other parties are involved. (MTEA pgs 5, 6, 7)"
 {¶ 18} At the heart of this case is the trial court's determination that the contracts entered into by the parties were not land installment contracts because they did not comply with the requirements of R.C. 5313.02. R.C. 5313.02 provides:
 {¶ 19} "(A) Every land installment contract shall be executed in duplicate, and a copy of the contract shall be provided to the vendor and the vendee. The contract shall contain at least the following provisions:
 {¶ 20} "(1) The full names and then current mailing addresses of all the parties to the contract;
 {¶ 21} "(2) The date when the contract was signed by each party;
 {¶ 22} "(3) A legal description of the property conveyed;
 {¶ 23} "(4) The contract price of the property conveyed;
 {¶ 24} "(5) Any charges or fees for services that are includable in the contract separate from the contract price;
 {¶ 25} "(6) The amount of the vendee's down payment;
 {¶ 26} "(7) The principal balance owed, which is the sum of the items specified in divisions (A)(4) and (5) of this section less the item specified in division (A)(6) of this section;
 {¶ 27} "(8) The amount and due date of each installment payment;
 {¶ 28} "(9) The interest rate on the unpaid balance and the method of computing the rate;
 {¶ 29} "(10) A statement of any encumbrances against the property conveyed;
 {¶ 30} "(11) A statement requiring the vendor to deliver a general warranty deed on completion of the contract, or another deed that is available when the vendor is legally unable to deliver a general warranty deed;
 {¶ 31} "(12) A provision that the vendor provide evidence of title in accordance with the prevailing custom in the area in which the property is located;
 {¶ 32} "(13) A provision that, if the vendor defaults on any mortgage on the property, the vendee can pay on that mortgage and receive credit on the land installment contract;
 {¶ 33} "(14) A provision that the vendor shall cause a copy of the contract to be recorded;
 {¶ 34} "(15) A requirement that the vendee be responsible for the payment of taxes, assessments, and other charges against the property from the date of the contract, unless agreed to the contrary;
 {¶ 35} "(16) A statement of any pending order of any public agency against the property."
 {¶ 36} The trial court found that the contracts did not contain a legal description of the property and that the boundaries of the ten acre parcel could not be reasonably determined. The trial court also found that there was no agreement between the parties as to the exact location of the boundaries.
 {¶ 37} In her first assignment of error, appellant argues that the trial court abused its discretion in finding that the parties made a mutual mistake of law and fact in believing that they had entered into a land installment contract. This court finds no merit in this assignment of error.
 {¶ 38} A mutual mistake of fact occurs when both parties, at the time of contracting, mistakenly assume a fact which forms the basis upon which they enter into the agreement. Restatement of Contracts (Second) Section 152 (1981). In the case sub judice, the trial court found that both parties made a mutual mistake in believing that they had entered into a land installment contract. Such a determination made by a trier of fact will not be disturbed on appeal.
 {¶ 39} The weight to be given the evidence and the credibility of the witnesses are primarily for the finder of fact. Star Bank Natl.Assn. v. Cirrocumulus Ltd. Partnership (1997), 121 Ohio App.3d 731, 744. As noted by the court in State v. Thompson (1998), 127 Ohio App.3d 511,529:
 {¶ 40} "The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder."
 {¶ 41} The trier of fact is not required to believe any witness. The fact-finder is free to believe some, all, or none of the testimony of any witness. Domigan v. Gillette (1984), 17 Ohio App.3d 228, 229. If the trial judge found appellees and their witnesses to be more credible than appellant and her witnesses, this determination is within the domain of the trier of fact. State v. Hill (1996), 75 Ohio St.3d 195, 205. Because the trial judge is best able to view the witnesses and observe their demeanor when he weighs the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 42} As to the historical or narrative facts, an appellate court gives total and absolute deference to the trial court as fact-finder.Raceway Video Bookshop, Inc. v. Cleveland Bd. of Zoning Appeals
(1997), 118 Ohio App.3d 264, 269. As fact-finder, the trial court acts within its sound discretion and its discretion will not be disturbed by an appellate court unless there is an abuse of that discretion. Id. A trial court's decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable. Castlebrook, Ltd. v. DaytonProperties Ltd. Partnership (1992), 78 Ohio App.3d 340, 346. Pursuant toSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, this court cannot, and will not, substitute our judgment for that of the trier of fact as to whether or not the parties made a mutual mistake of law and fact in believing that they had entered into a land installment contract.
 {¶ 43} Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 44} In her seventh, eighth and ninth assignments of error, appellant asserts that the trial court made errors in its factual determinations in regard to the absence of fraud, the absence of legal malice and in the existence of a month to month tenancy. This court finds no merit in any of these assignments of error.
 {¶ 45} The standard of review in regard to factual determinations by the trial court was set forth above. Applying this standard of review to these assignments of error, this court finds no merit in any of these assignments of error. This court will defer to the trial court as the fact-finder.
 {¶ 46} Accordingly, appellant's seventh, eighth and ninth assignments of error are found not well-taken.
 {¶ 47} We now will discuss appellant's second and fifth assignments of error together. In her second assignment of error, appellant argues that the trial court erred in concluding that the contracts were not land installment contracts and in concluding that there was no meeting of the minds regarding the boundaries of the property. In her fifth assignment of error, appellant argues that the trial court erred in considering the land contract purchase agreement for the ten acre parcel separately from the agreement for land contract purchase. This court finds no merit in either of these assignments of error.
 {¶ 48} The general principles of contract law govern the formation of contracts to convey real property. Century 21, Kittyhawk v. Lilly
(March 10, 1989), Montgomery App. No. 11036. It is basic contract law that to have an enforceable contract there must be a meeting of the minds of the parties to the contract. Noroski v. Fallet (1982), 2 Ohio St.3d 77,79. A valid contract must also be specific as to its essential terms, such as the identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term. Mr. MarkCorp. v. Rush, Inc. (1983), 11 Ohio App.3d 167, 169-70.
 {¶ 49} Quite simply, there was no "meeting of the minds" with respect to the exact location of the boundaries of the parcel of land to be conveyed to appellant. Both parties testified as to different areas for the location of the boundaries of the parcel of land to be conveyed. These differences as to what the parties believed to be the location of the boundaries of the parcel of land to be conveyed is evidence that there was no meeting of the minds. Consequently, the evidence supports the finding that the parties did not have a meeting of the minds, and, thus, no contract resulted. The trial court was not incorrect in this conclusion.
 {¶ 50} Furthermore, the trial court was not incorrect in concluding that the contracts were not valid land installment contracts. The contracts did not comply with the requirements of R.C. 5313.02 as set forth above. In particular, there was no legal description of the property to be conveyed.
 {¶ 51} Accordingly, appellant's second and fifth assignments of error are found not well-taken.
 {¶ 52} In her third assignment of error, appellant argues that the trial court erred in not recognizing substantial part performance. This court finds no merit in this assignment of error.
 {¶ 53} Pursuant to the statute of frauds, R.C. 1335.05, in order to bring an action for the enforcement of an agreement involving the transfer of an interest in land, the agreement must be in writing.Gleason v. Gleason (1991), 64 Ohio App.3d 667, 673. Nevertheless, Ohio courts have recognized that the equitable doctrines of partial performance can remove an agreement for the transfer of an interest in land from the operation of the statute of frauds. Saydell v. Geppetto'sPizza Ribs Franchise Sys., Inc. (1994), 100 Ohio App.3d 111, 121. In Geiger v. Geiger (Nov. 16, 1993) Montgomery App. No. 13841, the court explained that the burden of proof in regard to the doctrine of partial performance in relation to the statute of frauds required the party seeking to enforce an oral contract to establish both the contract and the applicability of the doctrine of partial performance by clear and convincing evidence. See, also, Tier v. Singrey (1951) 154 Ohio St. 521,529. (Plaintiff must establish an agreement in order to permit the statute of frauds to be obviated by the doctrine of part performance.)
 {¶ 54} As discussed supra, this court found that the trial court did not err in concluding that there was no meeting of the minds regarding the boundaries of the property and, thus, no valid, enforceable contract. As there was no valid, enforceable contract, the doctrine of part performance was inapplicable to this case.
 {¶ 55} Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 56} In her fourth assignment of error, appellant argues that the trial court erred in not applying the doctrine of estoppel. This court finds no merit in this assignment of error.
 {¶ 57} "Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good faith reliance upon that conduct." State exrel Cities Service v. Orteca (1980), 63 Ohio St.2d 295, 299. The existence of an equitable estoppel, where the evidence is susceptible to different reasonable inferences, is to be determined by the trier of fact. Gathagan v. Firestone Tire Rubber Co. (1985),23 Ohio App.3d 16, 18.
 {¶ 58} An appellate court will review a lower court's application of the doctrine of equitable estoppel using an abuse of discretion standard. Payne v. Cartee (1996), 111 Ohio App.3d 580, 589. A reviewing court cannot disturb the judgment of the trial court unless the record reveals that the court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In the case sub judice, this court cannot say that the trial court abused its discretion in not applying the doctrine of estoppel.
 {¶ 59} Accordingly, appellant's fourth assignment of error is found not well-taken.
 {¶ 60} This court will discuss appellant's sixth and tenth assignments of error together. In her sixth assignment of error, appellant argues that the trial court erred in ordering appellees to return the rent overpayment rather than ordering rescission, out-of-pocket, benefit of the bargain, or another appropriate remedy. In her tenth assignment of error, appellant argues that the trial court erred in not ordering specific performance. This court finds no merit in these assignments of error.
 {¶ 61} The primary purpose of rescission is to return the parties to their original positions before a contract was formed. Trajcevski v.Bell (1996), 115 Ohio App.3d 289, 292. A party proving breach of contract is entitled to the "benefit of its bargain," e.g., to be placed in as good a position as it would have been had the contract not been breached. Garofalo v. Chicago Title Ins. Co. (1995), 104 Ohio App.3d 95,108. A person whose contract has been breached may collect his out-of-pocket expenditures. 30 Ohio Jurisprudence 3d (1999) 28, Damages, Section 18. Specific performance will not be decreed absent a valid and mutually binding contract. Bretz v. The Union Central Life Ins. Co.
(1938), 134 Ohio St. 171, 177.
 {¶ 62} Each of these remedies requires the existence of a valid contract. However, there was no meeting of the minds and, thus, no valid contract was formed in the case sub judice. Thus, this court cannot say the trial court abused its discretion in not ordering these remedies.
 {¶ 63} Accordingly, appellant's sixth and tenth assignments of error are found not well-taken.
 {¶ 64} In her eleventh assignment of error, appellant argues that the trial court erred in not requiring proof of facts and a monetary accounting concerning a roadway project on the subject land. This court finds no merit in this assignment of error.
 {¶ 65} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Thus, we review the trial court's decision on an abuse of discretion standard. State v.Finnerty (1989), 45 Ohio St.3d 104, 107. The term "abuse of discretion" implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. An abuse of discretion is more than an error of judgment but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying this standard of review, an appellate court is not free to substitute its judgment for that of the trial court. Berk v.Matthews (1990), 53 Ohio St.3d 161, 169. Rather, reversal on appeal is warranted only when the trial court has exercised its discretion unreasonably, arbitrarily, or unconscionably. Id.
 {¶ 66} After a review of the record under the foregoing standard, this court concludes that the trial court did not abuse its discretion in not requiring evidence relating to the facts and a monetary accounting concerning a roadway project on the subject land.
 {¶ 67} Accordingly, appellant's eleventh assignment of error is found not well-taken.
 {¶ 68} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
Peter M. Handwork, P.J., Mark L. Pietrykowski, J., and GeorgeM. Glasser, J., CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] Appellant is entitled to no special consideration as a pro se litigant. "Pro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors." (Citations omitted.) Meyers v. First Natl Bank (1981),3 Ohio App.3d 209, 210.